JOSEPHINE MARINO, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 24816.)

CHARLES MARINO, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 24815.)

Court of Claims, February 24, 1939.

*Michael Nardone,* for the claimants.

*John J. Bennett, Jr., Attorney-General [Gerald J. Carey, Assistant Attorney-General,* of counsel], for the defendant.

RYAN, J. State Highway Route 55 passes northerly and southerly through the hamlet of Highland, Ulster county, N. Y. The road was resurfaced in 1933 with a bituminous macadam top twenty feet wide. It had been a State highway from about 1911. There was produced on the trial a book of field notes of a survey made in the year 1903. Also produced were blueprints of the contract plans of the road as built. The county assistant to the State's division engineer testified that he had made a diligent search in the division engineer's office and had been unable to find any maps showing the location of the State's right of way lines. Hence we have no definite information as to the exact width of the right of way of this highway at the location with which we are concerned. However, it appears that at this locality there was a retaining wall on each side of the road and that the distance from the face of the wall on the west side to the face of the wall on the east side was forty-four feet.

Running along the paved surface of the improved roadway on its easterly side there existed for many years a concrete sidewalk four and one-half feet wide. Under this sidewalk was a dry masonry retaining wall. On the easterly edge of the sidewalk there was a sheer drop of about six feet down to a creek bed. There was a guide railing made of pipe set in about six inches from the outer edge of the concrete walk. This left about four feet of walk surface available for use. The elevation of the sidewalk above the macadam highway was about six inches and the macadam was laid right up to the westerly edge of the sidewalk. Some of the witnesses referred to a curb between the macadam and the sidewalk. The photographs in evidence indicate that if there was a separate curb the sidewalk was laid flush with it so that in effect the curb and the sidewalk were one. The sidewalk was not laid nor maintained by the State of New York. It was conceded on the record that the sidewalk was laid by residents of the hamlet for their own convenience.

A long time before claimant's accident a piece of the concrete had been broken out of the corner of one of the sidewalk slabs, leaving a triangular-shaped hole about six inches deep. If curbing is to be distinguished from sidewalk then it should be noted that one of the photographs, Exhibit 8, discloses that there was a piece of the curb broken away as well. It also appears from the photographs that grass and weeds had grown in the gutter formed by the edge of the macadam meeting the edge of the concrete. The effect of this was to conceal, at least to some extent, the difference in elevation between the two.

There being no definite proof before the court as to the distance between the right of way lines, it is not possible to make a finding

that the sidewalk was laid on the State's property and within the legal limits of the highway. To all appearances it was.

Two disinterested witnesses who lived in the neighborhood were called by the claimant. One of them testified that the hole hereinabove described had existed for two years. The other testified that to his recollection it had been there for five years. The highway was maintained by the State of New York under the patrol system. The condition of the sidewalk and curb during this long period of time could and should have been observed by the State's patrolmen. However, nothing was done to warn travelers using the highway or to protect them from the dangers inherent in the hole in the curb and sidewalk.

The State of New York is under no obligation to build and maintain sidewalks along improved State highways except under the procedure provided by section 54 of the Highway Law, which was not adopted here. Nor is the State liable to maintain a sidepath constructed along its right of way as a purely private enterprise. (*Kibner* v. *State,* 114 Misc. 444.) If the sidewalk in question was outside the State's right of way the State had no legal right to go upon private land to repair it. On the other hand, where danger is in such close proximity to the traveled portion of the highway as to make traveling thereon perilous, or where there are unusual or exceptional conditions, the State has been held liable to maintain guards or to give warning of the danger. (*Johnson* v. *State,* 186 App. Div. 389.) This rule is not merely applicable to travelers in vehicles, motor or horse drawn, but applies to pedestrians as well.

Our attention has been called to the case of *Jewhurst* v. *City of Syracuse* (108 N. Y. 303). There defendant was held liable for injuries sustained by a pedestrian at a spot two or three feet north of the northern boundary of the street line by reason of a defective plank in a sidewalk which the city had not built and of which it never assumed jurisdiction. The Court of Appeals said there was no duty upon the city to make repairs to the sidewalk or liability for failure or neglect to make them. It, nevertheless, held the city liable, saying: " Where there is no visible boundary to the line of the street and a portion of the roadway traveled on is so near the actual line (although really outside thereof), as to induce the belief in any one exercising reasonable care that he is within such line, if such portion is for any reason rendered dangerous for travel and the city has notice thereof in due time, and such danger can be remedied by the exercise of reasonable care, either by the erection of a guard or railing along the true limits of the street, or in some other way, and the city neglects to guard it, we see no reason why it should not be held liable to one who is injured outside of such limits, under

such circumstances, he being himself free from any neglect contributing to the injury."

While the above authority involved a city upon which there may have rested the obligation to build sidewalks on its streets, we think the reasoning thereof should properly be applied to the duty resting upon the State in respect to the maintenance of its highways. It is to be noted that when this court decided the *Kibner* case (*supra*) it rested its decision upon the proposition that the State is not liable in tort except where liability has been assumed by statute, and cited *Smith* v. *State* (227 N. Y. 405). This court then held that the effect of the provisions of section 176 (now section 58) of the Highway Law " is to limit the liability which the State has assumed to the consequences resulting from defects in the highway which it has constructed and the maintenance of which it has undertaken, and also from conditions affecting public travel thereon."

Subsequently section 12-a of the Court of Claims Act was enacted. This is a general waiver of immunity by the State for the torts of its officers and employees. Therefore, whether or not the hole in the concrete sidewalk and curb in the instant case can or should be considered as a defect in the highway, nevertheless, if the State's patrolmen were negligent in the discharge of their duties toward travelers upon the highway by reason of failing to repair the hole or to warn or guard against it, the State's liability attaches under this statute.

In reviewing the *Kibner* case it should also be noted that the physical conditions were vastly different from those in the case here under consideration. In the *Kibner* case the claimant caught her foot on a flagstone covering over a sluiceway under a sidepath which paralleled the State highway. Between the improved part of the highway and the sidepath was a ditch of a width at the top of about seven feet. In this case, as above stated, the concrete sidewalk and curb immediately adjoined the paved surface of the highway distinguished from it only by the difference in elevation of six inches. It seems to us that travelers on foot were induced to believe and had the right to assume that the sidewalk was part of the highway and was in a condition reasonably safe for them to walk upon.

The claimant Josephine Marino was walking upon the concrete sidewalk, going in a southerly direction, at nine-thirty o'clock on a dark night. She was accompanied by her nephew, a child four or five years old. The boy walked on the outside or near the guide rail and the claimant on the inside or nearer the macadam. Mrs. Marino had never walked over the sidewalk before, although she had passed by the location in an automobile. She caught her foot

in the hole and fell and sustained fractures of both bones of the leg at the ankle. The record supports a finding that the claimant was free from contributory negligence.

We find that Josephine Marino's injuries were due to the negligence of the State, and an award is directed for both claimants.

BARRETT, P. J., concurs.